[File No. Cr. 151.]

STATE OF NORTH DAKOTA, Respondent, v. ROSS JOHNSON, Appellant.

(281 N. W. 16.)

Opinion filed May 31, 1938.   Rehearing denied July 21, 1938.

*A. W. Aylmer,* for appellant.

*P. O. Sathre,* Attorney General, *Russell D. Chase,* State's Attorney, and *C. S. Buck, Jr.,* Assistant State's Attorney, for respondent.

BUER, J. The defendant was charged with murder in the first degree, committed on March 25, 1936, and which resulted in the death of one James Haynes. Verdict of guilty of murder in the second degree was returned and the jury assessed the punishment as imprisonment in the state penitentiary for thirty years.

The appeal is from the judgment of conviction, and from the order denying defendant's motion for new trial.

There are eleven specifications of error. These deal mainly with the assertion that the evidence is insufficient to sustain the conviction, and that the court erred in charging the jury in one particular. The various subdivisions need not be discussed at length.

No exception was taken at any time to the portion of the charge alleged to be erroneous and therefore it cannot be reviewed on this appeal.

As said in State v. Shoars, 59 N. D. 67, 228 N. W. 413, "It is clear . . . that it is the intent of the law that all objections to the instructions to the jury by the trial court in a criminal case must be preserved by exceptions or they are waived. If the instructions are written and the trial judge submits them to counsel with a reasonable time for examination, and counsel does not except to the instructions or any part thereof, all objections are waived. If the trial judge does not submit the instructions to the counsel, exceptions may be filed any time within twenty days from the filing of the instructions in the office of the clerk of the district court."

It is not improper to state, however, that we have examined the portion of the charge said to be erroneous. The principal objection seems to be that it was not sufficiently explicit, though it is. alleged also to be erroneous. When we examine the charge as a whole we see no prejudicial error therein. "Though an instruction standing alone may be insufficient or erroneous it must be considered in connection with the remainder of the charge; and if the whole charge taken together correctly advises the jury as to the law, the error is thereby cured." State v. Berenson, 65 N. D. 480, 260 N. W. 256. We made this examination to satisfy ourselves that the defendant received a fair trial.

That the deceased was killed in Stutsman county on March 25, 1936, is established by incontrovertible evidence as is also the fact that it was a felonious homicide.

The sole issue, therefore, on this appeal is the sufficiency of the evidence to sustain the conviction of the defendant as the perpetrator, and under the provisions of § 9459 of the Comp. Laws the fact of the killing by the accused must be established beyond a reasonable doubt.

It is unnecessary to set forth the evidence in detail. The deceased was found in close proximity to the Round House in Jamestown about 2:45 A. M. He was lying on the ground unconscious, his head battered, and he had been and was bleeding profusely. There was snow on the ground and the place showed signs of a struggle. At the time of the discovery, though so unconscious as to be unable to speak, he was noticed raising himself on his elbow as if attempting to rise and the place where he was lying was described as "a sort of circle," he having moved himself around in the apparent attempt to arise. He never recovered consciousness, was removed to the hospital and died shortly thereafter. The autopsy showed that his head had been bashed by some heavy, blunt instrument, that a splinter of the bone had been driven through his brain. His skull was fractured on both sides and his death was caused by the blows. A railroad tool, known as a button bar, was found at the scene of the crime and had blood stains on it. Apparently it was this instrument that had been used to batter his head.

The state traced the movements of the defendant and the deceased from 6 P. M. the previous day and showed that they had been together practically all of the time. At the time indicated they were noticed near a taxicab office and the defendant had called on the accused to leave saying "Come on, Whitie, let's go"—Whitie being the nickname of the deceased. According to the state's evidence they were next seen in a barber shop. The defendant came in about 9:30 P. M. and inquired for the deceased saying that if he found him he would kill him, and using an opprobrious epithet. Shortly afterwards the deceased came in partially drunk. At that time the latter accused the defendant of fraud in a "split." It appears that for some time the two had been engaged in a series of petit larcenies in Jamestown, dividing the proceeds obtained, and this apparently was the cause of the discussion in the barber shop. They also discussed disagreements they had had in the Norton sandwich shop. There were other persons in the barber shop and one of them stated "If you guys want to fight you better go outside." They left between 10 and 10:15 P. M. When next seen the

defendant was standing in the doorway of an apartment house in the building where the Norton restaurant is, and shortly afterwards, about 11 P. M., the two were in the Rex Beer Parlor where they remained a short time. Here they inquired about a train going west and about 11:30 they were told of a train leaving at 12:05 A. M.. They left here about 11:50 P. M. and went to the Round House Restaurant. Here they ordered lunch, and the state's witness says they were arguing all the time they were there. They left about 12:50 A. M., asking their way to the yard office. About 1 A. M. the two of them were together in the Round House, remaining there some time. Three witnesses testified to this and the defendant asked the time the trains would leave, offering a drink to one of the witnesses. About 1:30 A. M., when last seen together, they were moving toward the door. About 1:35 A. M. the defendant was found in an engine at the cinder pit of the Round House and on being questioned as to his purpose, said he was looking for Whitie. About 1:50 A. M. a witness saw two men fighting just outside of the Round House. He left for lunch about 2 A. M. and when he came back at 2:45 the deceased was found on the ground where this witness had seen the fighting. The deceased had been discovered between 2:30 and 2:40 A. M. and about 3 A. M. was removed to the hospital. At about 3:30 A. M. the defendant was found in one of the engine cabs and when asked "Where is your pal?" said he did not know. The defendant was taken into custody by the police and one of them stated that the defendant seemed nervous while being driven to the jail and was rubbing his hands. The next morning, at about 11:30, a deputy sheriff examined the defendant and found welts and bruises on his arms and at that time the defendant said he must have been in a fight the night before as he was all stiff. This statement is corroborated by the testimony of another deputy sheriff.

Both the state and the defendant agree in this case that the last time the defendant and the deceased were together, so as to be identified, was at 1:30 A. M., at the time both parties were moving toward a door leading outside; and that about 1:35 A. M. the defendant was in an engine at the cinder pit and stated he was looking for Whitie. The defendant says the deceased left him in the Round House about 1:35 A. M. under the claim that he was going to collect from a customer for a suit of clothes that had been stolen and sold to the customer and

therefore the defendant waited for his return and did not leave the Round House. The uncontradicted evidence regarding the fighting which took place about 1:50 A. M. does not in any way show the presence of any third person other than employees of the Round House, and there is nothing to suggest any of these had any controversy with anyone. There is impeaching evidence on the part of the state that the defendant, when examined by the officers, stated he and the deceased separated at the Round House Restaurant about 12:50 A. M. and that he did not see him again alive, but this was denied by the defendant.

A witness for the state testified that about 11:50 P. M. he had seen "a pretty tall man" wearing an overcoat, standing behind a post near the Round House and on the route the witness would take to go from his work to the lunch room. The purpose and identity of this man is undisclosed. It is clear he could not have been the defendant for the state traces the movements of the latter quite accurately from 6 o'clock until 1:30 A. M. and the version given by the defendant himself is in accord with the statement of the state's witnesses until at least 1:35 A. M. The defendant claimed that one known as Blackie was with him and the deceased that night, separating about 11 P. M., and he did not see Blackie again. The inference is that because of alleged disagreements between Whitie and Blackie the man at the post may have been Blackie; but defendant and his witnesses describe Blackie as a short, dark man. Railroad officials and the police claim to have scoured the town the next day and found no trace of Blackie in Jamestown either immediately before or after the killing.

It is true that the conviction of the defendant rests to some extent at least upon circumstantial evidence. The court in its charge carefully defined circumstantial evidence and its effect and charged "In order, however, to warrant a conviction upon circumstantial evidence alone, the facts proved must not only be consistent with the guilt of the accused, but they must be inconsistent with any rational theory of his innocence." Time and again in the charge the court stated the defendant could not be convicted unless the jury was satisfied his guilt was proved beyond a reasonable doubt.

Every precaution was taken by the court and the state to give the defendant a fair trial. The record shows that counsel was furnished the defendant at the expense of the state, that such witnesses as he de-

sired were subpœnæd and paid at the expense of the state and that on this appeal the transcript of the testimony was furnished at the expense of the state. Throughout the whole trial the rights of the defendant were scrupulously protected. The record shows affirmative suggestions of aid and protection made by the court and the state's counsel, and defendant's own counsel was zealous in his behalf. At his own request trial was postponed to give him an opportunity to prepare. Throughout the whole trial the rights of the defendant were amply guarded. After the conviction several extensions of time were granted at his request. Defendant made no claim that he was not given every opportunity which he could demand.

We have reviewed the evidence carefully. The defendant denies the killing and he does offer an explanation as to his reason for being found in the Round House after the murder. But such matters are primarily for the jury to determine. His record of previous offenses, brought out on his cross-examination as a witness, shows a long career of criminal acts both petit and felonious. Convictions for burglary, for assault with intent to commit robbery and for larceny are admitted by him as well as numerous charges of vagrancy and petit larcenies. The jury were perfectly justified in disbelieving him, which they must have done. Evidence furnished by the state is sufficient to sustain the conviction and therefore the judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE and MORRIS, JJ., and BERRY, Dist. J., concur.

Mr. Justice SATHRE, being disqualified, did not participate, Hon. H. L. BERRY, Judge of Sixth Judicial District, sitting in his stead.

BURR, J. (On petition for rehearing.) Defendant files an earnest petition for rehearing, reiterating that the court erred in charging the jury as alleged in the specifications of error and that the evidence is in fact insufficient to sustain the verdict.

Defendant says that an exception was taken to the portion of the charge alleged to be erroneous in this, that two days after the verdict was rendered he made a motion for a new trial and in support of the motion specified this portion of the charge was erroneous. The ap-

pellant does not claim he made or filed any formal exception to the charge but claims that this procedure was in fact the filing of an exception and should be so considered. We need not pass upon whether this was a sufficient compliance with the statute. As stated in the main opinion the charge was examined in this respect and found not to be erroneous when we take the whole charge into consideration.

It is not necessary to again review the evidence. Appellant in his petition for rehearing says, "The counsel for Defendant concedes that the Court and State's Attorney gave this Defendant a fair trial, counsel for Defendant, however, is still convinced that an injustice was done this Defendant by such verdict and that he should get a new trial."

An examination of the record shows this characterization of the state's officers to be correct. The trial court was solicitous of the rights of the defendant and gave him the benefit in doubtful matters; the state's attorney was impartial and fair in his presentation of the case; and counsel for the defendant, though serving under the direction of the court, was zealous in appellant's defense. We are satisfied the evidence is sufficient to justify the verdict. The petition for rehearing is denied.

CHRISTIANSON, Ch. J., and NUESSLE and MORRIS, JJ., and BERRY, Dist. J., concur.